## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## IN AND FOR PINELLAS COUNTY, FLORIDA
## CIVIL DIVISION

CHAD LOCKARD,

      Plaintiff,

vs.

**CASE NUMBER: 17-005600-CI**

COOK, INCORPORATED, an Indiana
Corporation, COOK GROUP
INCORPORATED, an Indiana Corporation,
COOK MEDICAL, LLC, an Indiana
Limited Liability Company, VINOD
RAXWAL, M.D.; ACCESS
HEALTHCARE PHYSICIANS, L.L.C., a
Florida Limited Liability Corporation;
WAYNE CHENG, M.D.; PARAG PATEL,
M.D.; and COASTAL CARDIOLOGY
CONSULTANTS, P.A., a Florida
Professional Association d/b/a THE HEART
& VASCULAR INSTITUTE OF
FLORIDA, a Florida Fictitious Entity,

      Defendants.

_____/

## FIRST AMENDED COMPLAINT

      COMES NOW, the Plaintiff, CHAD LOCKARD, by and through his undersigned

counsel, and sues the Defendants, COOK INCORPORATED, an Indiana Corporation; COOK

GROUP INCORPORATED, an Indiana Corporation; COOK MEDICAL, LLC, an Indiana

Limited Liability Company f/k/a COOK MEDICAL INCORPORATED; VINOD RAXWAL,

M.D.; ACCESS HEALTHCARE PHYSICIANS, L.L.C., a Florida Limited Liability

Corporation; WAYNE CHENG, M.D.; PARAG PATEL, M.D.; and COASTAL CARDIOLOGY

CONSULTANTS, P.A., a Florida Professional Association d/b/a THE HEART & VASCULAR

INSTITUTE OF FLORIDA, a Florida Fictitious Entity, and alleges:

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff claims damages from Defendants in a sum in excess of Fifteen Thousand ($15,000.00) Dollars.

2.      At all times material hereto, Plaintiff, CHAD LOCKARD, was and is a resident of Pinellas County, Florida.

3.      At all times material hereto, Defendant, COOK INCORPORATED, was and is an Indiana Corporation with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404.    At all times material hereto, Defendant, COOK INCORPORATED, by and through it agents, apparent agents, servants and/or employees, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed and sold the inferior vena cava filter ("IVC Filter") known as the Celect Filter System (the "Celect Filter") and other IVC filters to be implanted in patients throughout the United States, including Florida.    At all times material hereto, Defendant, COOK INCORPORATED., was engaged in business in Florida and conducted substantial business activity in Florida, including Pinellas County, Florida.

4.      At all times material hereto, Defendant, COOK GROUP INCORPORATED, was and is an Indiana Corporation with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404.    At all times material hereto, Defendant, COOK GROUP INCORPORATED, by and through it agents, apparent agents, servants and/or employees, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed and sold the Celect Filter and other IVC filters to be implanted in patients throughout the United States, including Florida.  At all times material hereto, Defendant, COOK

2

GROUP INCORPORATED, was engaged in business in Florida and conducted substantial business activity in Florida, including Pinellas County, Florida.

5.      At all times material hereto, Defendant, COOK MEDICAL, LLC f/k/a COOK MEDICAL INCORPORATED was and is an Indiana Limited Liability Company with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. At all times material hereto, Defendant, COOK MEDICAL, LLC, by and through it agents, apparent agents, servants and/or employees, designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed and sold the Celect Filter and other IVC filters to be implanted in patients throughout the United States, including Florida. At all times material hereto, Defendant, COOK MEDICAL, LLC was engaged in business in Florida and conducted substantial business activity in Florida, including Pinellas County, Florida.

6.      Defendants, COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, are sometimes collectively referred to herein as "COOK" or the "Cook Defendants."

7.      At all times material hereto, Defendant, VINOD RAXWAL, M.D., was and is a duly licensed health care provider in the state of Florida who held himself out to be a medical doctor specializing in the area of Cardiology. At all times material hereto, Defendant, VINOD RAXWAL, M.D., undertook the care and treatment of Plaintiff, CHAD LOCKARD.

8.      At all times material hereto, Defendant, ACCESS HEALTHCARE PHYSICIANS, L.L.C., was and is a Florida Limited Liability Corporation and was duly licensed and existing under the laws of the state of Florida. At all times material hereto, ACCESS HEALTHCARE PHYSICIANS, L.L.C., undertook the care and treatment of Plaintiff, CHAD LOCKARD.

9.     At all times material hereto, Defendant, VINOD RAXWAL, M.D., was the agent, apparent agent, servant and/or employee of Defendant, ACCESS HEALTHCARE PHYSICIANS, L.L.C., and was acting within the course and scope of his agency, apparent agency, servitude and/or employment with that entity.

10.    At all times material hereto, Defendant, WAYNE CHENG, M.D., was and is a duly licensed health care provider in the state of Florida who held himself out to be a medical doctor specializing in the area of Cardiology.  At all times material hereto, Defendant, WAYNE CHENG, M.D., undertook the care and treatment of Plaintiff, CHAD LOCKARD.

11.    At all times material hereto, Defendant, PARAG PATEL, M.D., was and is a duly licensed health care provider in the state of Florida who held himself out to be a medical doctor specializing in the area of Interventional Cardiology.  At all times material hereto, Defendant, PARAG PATEL, M.D., undertook the care and treatment of Plaintiff, CHAD LOCKARD.

12.    At all times material hereto, Defendant, COASTAL CARDIOLOGY CONSULTANTS, P.A., was and is a Florida Professional Association doing business as THE HEART & VASCULAR INSTITUTE OF FLORIDA, a Florida Fictitious Entity, and was duly licensed and existing under the laws of the state of Florida.  At all times material hereto, COASTAL CARDIOLOGY CONSULTANTS, P.A. d/b/a THE HEART & VASCULAR INSTITUTE OF FLORIDA undertook the care and treatment of Plaintiff, CHAD LOCKARD.

13.    At all times material hereto, Defendants, WAYNE CHENG, M.D. and PARAG PATEL were the agents, apparent agents, servants and/or employees of Defendant, COASTAL CARDIOLOGY CONSULTANTS, P.A., a Florida Professional Association d/b/a THE HEART & VASCULAR INSTITUTE OF FLORIDA, a Florida Fictitious Entity, and each was acting

4

within the course and scope of his agency, apparent agency, servitude and/or employment with that entity.

14.    Venue is proper in this Court pursuant to Chapter 47, Florida Statutes because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Pinellas County, Florida and because one or more defendant resides in Pinellas County, Florida.

**GOOD FAITH CERTIFICATION AS TO CLAIMS AGAINST VINOD RAXWAL, M.D., ACCESS HEALTHCARE PHYSICIANS, L.L.C., WAYNE CHENG, M.D., PARAG PATEL, M.D. and CARDIOLOGY CONSULTANTS, P.A.**

15.    Prior to filing this Complaint, the undersigned attorneys certify that they conducted a reasonable investigation of the claims asserted against these Defendants and that their investigation gives rise to a good-faith belief that grounds exist for this action.

16.    Prior to filing this Complaint, Plaintiff, CHAD LOCKARD, has complied with all provisions of Chapter §766, Florida Statutes, and Rule 1.650 of the Florida Rules of Civil Procedure and all other conditions precedent to filing this cause.

**FACTUAL ALLEGATIONS**

17.    The Cook Defendants design, research, develop, manufacturer, test, market, advertise, promote, distribute, and sell medical products including, IVC filters.  The Cook IVC filters are sold and marketed to prevent, among other things, recurrent pulmonary embolism. Cook Defendants' IVC filters include the Cook Celect Vena Cava Filter and the Gunther Tulip Filter (collectively the "Cook Filters").

18.    An IVC filter, like the Cook Filters, is a device that is designed to "catch" blood clots, known as "emboli," that travel from the lower portions of the body to the heart and/or lungs.  IVC filters may be designed to be implanted, either permanently or temporarily within the inferior vena cava.  The Cook Filters are placed via a coaxial introducer sheath system.

19.     The inferior vena cava is a vein that returns blood to the heart from the lower portions of the body.  In certain people, for various reasons, blood clots travel from the vessels in the legs and pelvis, through the vena cava and into the lungs.   Oftentimes, these blood clots develop in the deep veins of the leg.   These blood clots are called "deep vein thrombosis" (DVT).  Once blood clots reach the lungs, they are called "pulmonary emboli" (PE).  Pulmonary emboli present grave risks to human health and often result in death.

20.     The Cook Defendants sought Food and Drug Administration ("FDA") approval to market the Cook Filters and/or their components under Section 510(k) of the Medical Devices Amendment.   In *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478-79 (1996), the United States Supreme Court described the 510(k) process as follows:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis … The §510(k) notification process is by no means comparable to the [premarket approval] process; in contrast to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in an average of only 20 hours … Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed very quickly.

21.     The Cook Gunther Tulip Vena Cava Filter was approved via the 510(k) process for permanent placement in 2000 and was approved via the 510(k) process for retrievable use in 2003.  The Cook Gunther Tulip Vena Cava Filter has a top hook and (4) anchoring struts for fixation and on each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on each side of the strut forming an overall "flower" type formation on each strut.

22.     The Cook Celect Vena Cava Filter was approved via the 510(k) process for permanent placement in 2007 and was approved via the 510(k) process for retrievable use in

2008. The Cook Celect Vena Cava Filter has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

23.    The Cook Filters are constructed of conichrome.

24.    The Cook Defendants specifically advertise the conichrome construction of the filter as a frame which "reduces the risk of fracture."

25.    At all times material hereto, the Cook Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

26.    At all times material hereto, the Cook Defendants marketed and promoted the Cook Filters as safe and effective as their predicate devices with additional benefits; however, the Cook Filters were subject to serious and potentially fatal adverse events, including, an unreasonable risk of breakage, tilt, inability of removal and migration.

27.    The failure of the Cook Filters is attributable, in part, to the fact that the Cook Filters suffer from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*. At all times material hereto, Defendants knew its Cook Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

28.    The Cook Filters were inadequately studied and tested prior to being manufactured, marketed and sold.

29.    A retrospective review of Cook Filters retrieved between July 2006 and February 2008 was performed. One hundred and thirty (130) filter retrievals were attempted but in 33 cases, the standard retrieval technique failed. The authors concluded that "unsuccessful retrieval was due to significant endothelialization and caval penetration" and that "hook endothelialization

is the main factor resulting in failed retrieval and continues to be a limitation with these filters." O. Doody, et al.; "Assessment of Snared-Loop Technique When Standard Retrieval of Inferior Vena Cava Filters Fail" Cardiovasc Intervent Radiol (Sept 4, 2008 Technical Note).

30.     A retrospective review of 115 patients who underwent Cook Celect Filter insertion between December 2005 and October 2007 was performed. While filter insertion was successful in all patients, the authors concluded that "[f]ailed retrieval secondary to hook endothelialization continues to be an issue with this filter." O. Doody, et al; Journal of Medical Imaging and Radiation Oncology "Initial Experience in 115 patients with the retrievable Cook Celect vena cava filter" 53 (2009) 64-68 (original article).

31.     In a review of clinical data related to 73 patients who had Celect Filters implanted between August 2007 and June 2008, the authors found that the Celect Filter was associated with a high incidence of caval filter leg penetration. Immediately after fluoroscopy-guided filter deployment in 61 patients, four filters (6.5%) showed significant tilt.  Follow-up abdominal CT in 18 patients demonstrated filter related problems in 7 (39%), which included penetration of filter legs in 4 and fracture/migration of filter components in 1.

32.     In a study of Cook Filters implanted between July 2007 and May of 2009 reported by Cardiovascular Interventional Radiology electronically on March 30, 2011 and published by journal in April 2012, one hundred percent of the Cook Filters imaged after 71 days of implant caused some degree of filter perforation of the venal caval wall. Durack JC, et al, Cardiovasc Intervent Radiol., "Perforation of the IVC: rule rather than the exception after longer indwelling times for the Gunther Tulip and Celect Retrievable Filters," 2012 Apr.; 35(2):299-308. Epub 2011 Mar 30. The authors concluded: "Although infrequently reported in the clinical literature, clinical sequelae from IVC filter components breaching the vena cava can be significant."

8

Defendants knew or should have known that their IVC filters were more likely than not to perforate the vena cava wall.

33.     This same study reported that tilt was seen in 20 out of 50 (40%) of the implanted Cook Filters and all titled filters also demonstrated vena caval perforation. Defendants knew or should have known that their IVC filters were more likely than not to tilt and to perforate.

34.     While not inclusive of all medical studies published during the relevant time period, the above references show that the Cook Defendants failed to disclose to physicians, patients and/or Plaintiff that their Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.

35.     At all times material hereto, the Defendants continued to promote the Cook Celect Filter as safe and effective even when inadequate clinical trials had been performed to support long or short-term safety and efficacy.

36.     The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters.

37.     At all times material hereto, the Cook Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Cook Filters, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

38.     The Cook Filters were designed, manufactured, distributed, sold and/or supplied by the Cook Defendants, and were marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the products' failure and serious adverse events.

39.     At all times material hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the Cook Filters, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

40.     On November 15, 2008, Plaintiff, CHAD LOCKARD, age 32, presented to Baycare St. Joseph's Hospital in Tampa, FL following a traumatic injury to the face.  In treating LOCKARD'S injuries, a Cook Celect® Retrievable Inferior Vena Cava Filter was placed within LOCKARD'S inferior vena cava.

41.     LOCKARD was discharged from Baycare St. Joseph's Hospital on November 26, 2008 with the Cook Celect IVC filter in place.

42.     On January 30, 2015, LOCKARD presented to the office of Vinod Raxwal, M.D., an Interventional Cardiologist, complaining of chest pain.  At the time of the visit Dr. Raxwal recorded that LOCKARD had "no cardiac devices." Dr. Raxwal failed to record that LOCKARD had an IVC filter in place.

43.     On February 2, 2015, LOCKARD presented to the Emergency Department of Mease Countryside Hospital, complaining of chest pain.

44.     On February 3, 2015, LOCKARD was discharged from Mease Countryside Hospital.  LOCKARD'S discharge summary noted that his cardiac enzymes were negative, his EKG was negative for ischemia and that his pain was most likely musculoskeletal in nature.

45.     On February 11, 2015, LOCKARD followed up with Dr. Raxwal.  Dr. Raxwal prescribed a "CT Angiogram" and recommended that LOCKARD return in two (2) weeks.

46.    On February 16, 2015, LOCKARD presented to West Coast Radiology and underwent a CT Angiogram prescribed by Dr. Raxwal.    The CT Angiogram results noted the following:

> **INTERPRETATION**
> **1.    Normal CT angiography of the coronary arteries without calcifications or stenosis.**
> **2.    <u>A linear metallic density approximately 18 x 4 mm in the right ventricle</u>.  The appearance is suggestive of residual pacing lead.  Please correlate with clinical history.**

47.    Defendant Dr. Raxwal failed to review the February 16, 2015 CT Angiogram results and/or failed to appreciate the clinical significance of the CT Angiogram results.  At no time did Dr. Raxwal notify LOCKHARD that he had a piece of metal in his right ventricle.  At no time did Dr. Raxwal investigate and/or determine the cause of metal residing in LOCKARD's right ventricle.  As a result of Dr. Raxwal's failure to provide this important information to LOCKARD, LOCKARD was unable to obtain treatment and continued to suffer from pain and physical impairment.

48.    On February 17, 2015, LOCKARD consulted with Wayne Cheng, M.D., a Cardiologist, at The Heart & Vascular Institute regarding his recurrent chest pain.  Dr. Cheng recommended that LOCKARD have a cardiac catheterization performed by his partner Parag Patel, M.D.

49.    Defendant Dr. Cheng received a copy of LOCKARD's February 16, 2015 CT Angiogram results; however, Dr. Cheng failed to review the February 16, 2015 CT Angiogram results and/or failed to appreciate the clinical significance of the CT Angiogram results.    At no time did Dr. Cheng notify LOCKHARD that he had a piece of metal in his right ventricle.  At no time did Dr. Cheng investigate and/or determine the cause of metal residing in LOCKARD's right ventricle.  As a result of Dr. Cheng's failure to provide this important information to

LOCKARD, LOCKARD was unable to obtain treatment and continued to suffer from pain and physical impairment.

50.     On February 24, 2015, LOCKARD's girlfriend called Heart & Vascular Institute to inform Dr. Cheng that LOCKARD was suffering from extreme chest pain, shortness of breath and dizziness.  LOCKARD was instructed to go to Mease Countryside Hospital.

51.     On February 24, 2015, LOCKARD presented to the Emergency Room of Mease Countryside Hospital complaining of intense chest pain.

52.     On February 26, 2015, Defendant Dr. Patel of the Heart & Vascular Institute performed a cardiac catheterization procedure on LOCKARD.     Prior to performing the procedure, Dr. Patel failed to review the February 16, 2015 CT Angiogram results and/or failed to appreciate the clinical significance of the CT Angiogram results.     At no time did Dr. Patel notify LOCKHARD that he had a piece of metal in his right ventricle.  At no time did Dr. Patel investigate and/or determine the cause of metal residing in LOCKARD's right ventricle.  As a result of Dr. Patel's failure to provide this important information to LOCKARD, LOCKARD received an incorrect medical diagnosis, was unable to receive treatment and continued to suffer from pain and physical impairment.

53.     On September 1, 2016, LOCKARD underwent a CT scan of the lumbar spine prior to undergoing chiropractic care.  The CT scan results noted the following:

> **IMPRESSION:**
>
> **An infrarenal retrievable IVC filter is seen in place in the IVC (likely a Cook Celect Platinum).  There has been penetration of the left longer strut through the IVC into the aorta.  The posterior longer strut has penetrated through the posterior aspect of the IVC and appears lodged within the anterior inferior base of the L3 vertebral body.  The retrieval hook appears to be tilted anteriorly and may at least be partially epithelialized.  The filter itself appears intact.  Although this can be asymptomatic, this can sometimes be associated with back pain.**

54.     On September 6, 2016, LOCKARD presented to Mease Countryside Hospital to follow up on his September 1, 2016 CT scan results.

55.     On September 6, 2016, LOCKARD underwent a CT of the abdomen and pelvis with contrast.  The CT scan results noted the following:

> **IMPRESSION:**
>
> **PENETRATION OF LEFT-SIDED MAJOR STRUT OF THE INFERIOR VENA CAVA FILTER ACROSS THE POSTERIOR WALL OF THE ABDOMINAL AORTA WITH MILD THICKENING OF THE POSTERIOR WALL LIKELY RELATED TO FOREIGN BODY REACTION. THERE IS NO ARTERIOVENOUS FISTULA OR PSEUDOANEURYSM. OVERALL APPEARANCE IS NONSIGNIFICANTLY CHANGED WHEN COMPARED TO PRIOR CT FROM 6/3/09.**
>
> **POSTERIOR MAJOR STRUT OF THE FILTER HAS BECOME DISENGAGED FROM THE MAIN BODY AND IS SEEN OUTSIDE THE WALL OF THE INFERIOR VENA CAVA EXTENDING INTO THE ANTERIOR INFERIOR L3 VERTEBRAL BODY. THIS IS ALSO NOT SIGNIFICANTLY CHANGED FROM 2009.**
>
> **THREE MINOR STRUTS OF THE FILTER HAVE BECOME DISENGAGED AND EMBOLIZED TO THE RIGHT VENTRICLE AND ARE PARTIALLY EMBEDDED IN THE RIGHT VENTRICULAR WALL THIS IS NEW COMPARED TO 2009.**

56.     In October 2016, LOCKARD underwent retrieval of the IVC filter at Tampa General Hospital.  However, the struts in his spine and in his right ventricle remain lodged in those respective locations.

## COUNT I

### NEGLIGENCE
### AS TO COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC

57.     Plaintiff re-alleges the allegations contained in paragraphs 1 through 56 above and further alleges:

58.     Defendants, COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, each owed a duty of care to Plaintiff, CHAD LOCKARD, to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Celect Filter, but breached that duty of care.

59.     The negligence of Defendants, COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, includes, but is not limited to, the following:

  a.  Failing to use reasonable care in designing, testing, manufacturing, marketing, labeling, packaging, and selling the Celect Filter.

60.     Had Defendants, COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, not been negligent as set forth above, CHAD LOCKARD would not have suffered the injuries he suffered.

61.     As a direct and proximate result of the Cook Defendants' negligence described herein, Plaintiff has suffered permanent and continuous injuries, pain and suffering, disability, impairment, emotional trauma and lost earnings.

WHEREFORE, Plaintiff demands judgment against Defendants, COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, for all damages and all costs of this action.  Plaintiff further demands a trial by jury on all issues so triable.

<u>**COUNT II**</u>

**STRICT LIABILITY - DESIGN DEFECT**
**AS TO COOK INCORPORATED, COOK GROUP INCORPORATED and**
**COOK MEDICAL, LLC**

62.     Plaintiff re-alleges the allegations contained in paragraphs 1 through 56 above, and further alleges:

14

63.    At all times relevant to this action, the Cook Defendants individually and/or in concert, designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted and sold IVC filters including the Celect Filter.

64.    The Celect Filter is defective in its design in that it is not reasonably fit, suitable or safe for its intended purpose and its foreseeable risks exceed its benefits.

65.    The Celect Filter was defectively designed when sold to Plaintiff and/or his implanting physician.

66.    The Celect Filter was unreasonably dangerous when sold to Plaintiff and/or his implanting physician.

67.    The Celect Filter implanted in Plaintiff was expected to reach and did reach Plaintiff without substantial change in the defective and unreasonably dangerous condition in which it was manufactured, marketed and sold.

68.    The Celect Filter was implanted in Plaintiff via the Instructions for Use and in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Cook Defendants.

69.    The Celect Filter failed to perform as safely as an ordinary consumer would expect and the defective and unreasonably dangerous condition of the Celect Filter was a proximate cause of damages and injuries to Plaintiff.

WHEREFORE,    Plaintiff    demands    judgment    against    Defendants,    COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, for all damages and all costs of this action.  Plaintiff further demands a trial by jury on all issues so triable.

## COUNT III

### STRICT LIABILITY - MANUFACTURING DEFECT
### AS TO COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC

70.     Plaintiff re-alleges the allegations contained in paragraphs 1 through 56 above, and further alleges:

71.     The Celect Filter implanted in Plaintiff was unreasonably dangerous, not reasonably safe for its intended use, and was defective as a matter of law with respect to its manufacture.

72.     The Celect Filter implanted in Plaintiff was different from its intended design and failed to perform as safely as its intended design would have performed.

73.     The Celect Filter implanted in Plaintiff reached Plaintiff without substantial change affecting its condition and was used as intended.

74.     The defective and unreasonably dangerous condition of the Celect Filter was a proximate cause of the damages and injuries to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, for all damages and all costs of this action.  Plaintiff further demands a trial by jury on all issues so triable.

## COUNT IV

### STRICT LIABILITY - FAILURE TO WARN
### AS TO COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC

75.     Plaintiff re-alleges the allegations contained in paragraphs 1 through 58 above, and further alleges:

76.    The Cook Defendants manufactured, marked, sold and/or distributed the Celect Filter that was implanted in Plaintiff.

77.    At all times material hereto, the Celect Filter was dangerous and presented a substantial danger to patients who were implanted with it.

78.    The risks and dangers associated with the Celect Filter were known or knowable to the Cook Defendants at the time of implantation in Plaintiff, yet each Cook Defendant failed to provide reasonable instructions or warnings of such risks and dangers to Plaintiff and/or his implanting physician.

79.    The information provided by the Cook Defendants to the medical community and to consumers, including Plaintiff and/or his implanting physician, did not accurately reflect the serious and potentially fatal adverse events associated with the Celect Filter.

80.    Ordinary consumers like Plaintiff, and/or his implanting physician, could not have recognized the potential risks and dangers of the Celect Filter because the Cook Defendants hid and/or downplayed the risks and dangers associated with the Celect Filter.

81.    The Celect Filter was used by Plaintiff as intended.

82.    The failure of the Cook Defendants to adequately warn about the risks and dangers associated with the Celect Filter was a proximate cause of the damages and injuries suffered by Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, COOK INCORPORATED, COOK GROUP INCORPORATED and COOK MEDICAL, LLC, for all damages and all costs of this action.  Plaintiff further demands a trial by jury on all issues so triable.

## COUNT V

### FRAUDULENT MISREPRESENTATION
### AS TO COOK INCORPORATED, COOK GROUP INCORPORATED and
### COOK MEDICAL, LLC

83.    Plaintiff, by reference, reiterates and adopts the foregoing paragraphs 1 through 56 above as if set forth herein and further states as follows:

84.    Cook Defendants made representations to Plaintiff and/or his implanting physician regarding the character, quality, safety and/or benefits of the Celect Filter despite knowing that these representations were false.

85.    Through their representations to Plaintiff and/or his implanting physician, Cook Defendants intended to induce Plaintiff and/or his implanting physician to utilize the Celect Filter.

86.    In reliance on Cook Defendants' misrepresentations, Plaintiff's healthcare provider implanted the Celect Filter in Plaintiff.

87.    The representations made to Plaintiff and/or his healthcare provider were material to the decision to implant the Celect Filter in Plaintiff.

88.    Cook Defendants' representations regarding the character or quality of the Celect Filter were untrue and/or misleading.

89.    The Cook Defendants had actual knowledge based upon studies, published reports and clinical experience that the Celect Filter posed an unreasonable risk of fracture, migration, and perforation.

90.    Cook Defendants intentionally misrepresented and/or omitted this information in the Celect Filter's product labeling, promotions and other written and oral communications with Plaintiff, his healthcare provider, and the medical community.

18

91.     As a direct and proximate result of the Cook Defendants' misrepresentations and/or omissions, Plaintiff suffered personal injuries and economic and non-economic damages, including pain and suffering.

## COUNT VI

### NEGLIGENT MISREPRESENTATION
### AS TO COOK INCORPORATED, COOK GROUP INCORPORATED and
### COOK MEDICAL, LLC

92.     Plaintiff, by reference, reiterates and adopts the foregoing paragraphs 1 through 56 above as if set forth herein and further states as follows:

93.     Defendants made representations to Plaintiff and/or his implanting physician regarding the character, quality, safety and/or benefits of the Celect Filter despite knowing that these representations were false and/or without knowing the truth of the representations.

94.     Through their representations to Plaintiff and/or his implanting physician, Cook Defendants intended to induce Plaintiff's healthcare provider to implant the Celect Filter in Plaintiff.

95.     In reliance on Cook Defendants' misrepresentations, Plaintiff's healthcare provider implanted the Celect Filter in Plaintiff.

96.     The representations made to Plaintiff and/or his healthcare provider were material to Plaintiff and/or his healthcare provider's decision to implant the Celect Filter in Plaintiff.

97.     Cook Defendants' representations regarding the character or quality of the Celect Filter were untrue and/or misleading.

98.     The Cook Defendants knew or should have known, based upon studies, published reports and clinical experience, that the Celect Filter posed an unreasonable risk of fracture, migration, and perforation.

99.     Cook Defendants misrepresented or omitted this information in their product labeling, promotions and other written and oral communications with Plaintiff, his healthcare providers and the medical community.

100.    In supplying the false information, Cook Defendants failed to exercise reasonable care or competence in their communications to Plaintiff, his healthcare providers and the medical community.

101.    As a direct and proximate result of the Cook Defendants' negligent misrepresentations and/or omissions, Plaintiff suffered personal injuries and economic and non-economic damages, including pain and suffering.

## COUNT VII

### NEGLIGENCE OF VINOD RAXWAL, M.D.

102.    Plaintiff, by reference, reiterates and adopts the foregoing paragraphs 1 through 56 above as if set forth herein and further states as follows:

103.    Defendant VINOD RAXWAL, M.D., owed Plaintiff CHAD LOCKARD a duty to evaluate and treat him within the prevailing standard of care for a similarly qualified medical doctor under similar facts and circumstances.

104.    Defendant VINOD RAXWAL, M.D. breached his duty to Plaintiff CHAD LOCKARD in the following ways:

   a.   Failing to obtain and/or evaluate the findings of the February 16, 2015 CT Angiogram, which revealed the presence of a piece of metal lodged in LOCKARD's right ventricle.

   b.   Failing to investigate or determine the cause of the metal residing in LOCKARD's right ventricle, despite the absence of a cardiac device and the presence of an IVC filter.

   c.   Failing to communicate to LOCKARD regarding the findings of the February 16, 2015 CT Angiogram, which showed the presence of a piece of metal lodged in LOCKARD's right ventricle.

20

d.  Failing to refer LOCKARD to the appropriate healthcare provider in order to investigate, remove and/or treat LOCKARD for the piece of metal lodged in LOCKARD's right ventricle.

105.  Defendant VINOD RAXWAL, M.D., through his breaches of duty, caused the damages suffered by Plaintiff CHAD LOCKARD as more fully described herein.

WHEREFORE, Plaintiff CHAD LOCKARD demands a judgment against the Defendant VINOD RAXWAL, M.D., for compensatory damages in an amount within the jurisdictional limits of this court, in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and for such other and further relief to which the Plaintiff may be justly entitled, and demands trial by jury of those issues triable as of right by a jury.

## COUNT VIII

### VICARIOUS LIABILITY OF ACCESS HEALTHCARE PHYSICIANS, L.L.C. BASED ON THE NEGLIGENCE OF VINOD RAXWAL, M.D.

106.  Plaintiff, by reference, reiterates and adopts the foregoing paragraphs 1 through 29 above as if set forth herein and further states as follows:

107.  At all times material hereto, Defendant VINOD RAXWAL, M.D.'s treatment of CHAD LOCKARD was performed within the scope of his employment with ACCESS HEALTHCARE PHYSICIANS, L.L.C., a Florida Limited Liability Corporation. VINOD RAXWAL, M.D.'s treatment of CHAD LOCKARD was the kind of conduct he was employed to perform, it occurred substantially within the time and space limits authorized by the work to be performed, and was activated at least in part to serve the interest of ACCESS HEALTHCARE PHYSICIANS, L.L.C., a Florida Limited Liability Corporation.

108.  Defendant ACCESS HEALTHCARE PHYSICIANS, L.L.C., a Florida Limited Liability Corporation, as the employer, principal, and/or master of the Defendant VINOD

RAXWAL, M.D., is vicariously liable as a matter of law for the acts and omissions of the Defendant VINOD RAXWAL, M.D., as set forth in Count I herein.

WHEREFORE, Plaintiff CHAD LOCKARD demands a judgment against the Defendant ACCESS HEALTHCARE PHYSICIANS, L.L.C., a Florida Limited Liability Corporation, for compensatory damages in an amount within the jurisdictional limits of this court, in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and for such other and further relief to which the Plaintiff may be justly entitled, and demands trial by jury of those issues triable as of right by a jury.

## COUNT IX

### NEGLIGENCE OF WAYNE CHENG, M.D.

109.    Plaintiff, by reference, reiterates and adopts the foregoing paragraphs 1 through 29 above as if set forth herein and further states as follows:

110.    Defendant WAYNE CHENG, M.D., owed Plaintiff CHAD LOCKARD a duty to evaluate and treat him within the prevailing standard of care for a similarly qualified medical doctor under similar facts and circumstances.

111.    Defendant WAYNE CHENG, M.D. breached his duty to Plaintiff CHAD LOCKARD in the following ways:

    a. Failing to obtain and/or evaluate the findings of the February 16, 2015 CT Angiogram, which revealed the presence of a piece of metal lodged in LOCKARD's right ventricle.

    b. Failing to investigate or determine the cause of the metal residing in LOCKARD's right ventricle, despite the absence of a cardiac device and the presence of an IVC filter.

    c. Failing to communicate to LOCKARD regarding the findings of the February 16, 2015 CT Angiogram, which showed the presence of a piece of metal lodged in LOCKARD's right ventricle.

      d. Failing to refer LOCKARD to the appropriate healthcare provider in order to investigate, remove and/or treat LOCKARD for the piece of metal lodged in LOCKARD's right ventricle.

112.    Defendant WAYNE CHENG, M.D., through his breaches of duty, caused the damages suffered by Plaintiff CHAD LOCKARD as more fully described herein.

WHEREFORE, Plaintiff CHAD LOCKARD demands a judgment against the Defendant WAYNE CHENG, M.D., for compensatory damages in an amount within the jurisdictional limits of this court, in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and for such other and further relief to which the Plaintiff may be justly entitled, and demands trial by jury of those issues triable as of right by a jury.

## COUNT X

### NEGLIGENCE OF PARAG PATEL, M.D.

113.    Plaintiff, by reference, reiterates and adopts the foregoing paragraphs 1 through 29 above as if set forth herein and further states as follows:

114.    Defendant PARAG PATEL, M.D., owed Plaintiff CHAD LOCKARD a duty to evaluate and treat him within the prevailing standard of care for a similarly qualified medical doctor under similar facts and circumstances.

115.    Defendant PARAG PATEL, M.D. breached his duty to Plaintiff CHAD LOCKARD in the following ways:

      a. Failing to obtain and/or evaluate the findings of the February 16, 2015 CT Angiogram, which revealed the presence of a pice of metal lodged in LOCKARD's right ventricle.

      b. Failing to investigate or determine the cause of the metal residing in LOCKARD's right ventricle, despite the absence of a cardiac device and the presence of an IVC filter.

    c.   Failing to communicate to LOCKARD regarding the findings of the February 16, 2015 CT Angiogram, which showed the presence of a piece of metal lodged in LOCKARD's right ventricle.

    d.   Failing to refer LOCKARD to the appropriate healthcare provider in order to investigate, remove and/or treat LOCKARD for the piece of metal lodged in LOCKARD's right ventricle.

116.    Defendant PARAG PATEL, M.D., through his breaches of duty, caused the damages suffered by Plaintiff CHAD LOCKARD as more fully described herein.

WHEREFORE, Plaintiff CHAD LOCKARD demands a judgment against the Defendant WAYNE CHENG, M.D., for compensatory damages in an amount within the jurisdictional limits of this court, in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and for such other and further relief to which the Plaintiff may be justly entitled, and demands trial by jury of those issues triable as of right by a jury.

## COUNT XI

**VICARIOUS LIABILITY AGAINST COASTAL CARDIOLOGY CONSULTANTS, P.A., d/b/a THE HEART & VASCULAR INSTITUTE OF FLORIDA BASED ON THE NEGLIGENCE OF WAYNE CHENG, M.D. & PARAG PATEL, M.D.**

117.    Plaintiff, by reference, reiterates and adopts the foregoing paragraphs 1 through 29 above as if set forth herein and further states as follows:

118.    At all times material hereto, Defendants WAYNE CHENG, M.D.'s and PARAG PATEL, M.D.'s treatment of CHAD LOCKARD was performed within the scope of their employment with COASTAL CARDIOLOGY CONSULTANTS, P.A., a Florida Professional Association d/b/a THE HEART & VASCULAR INSTITUTE OF FLORIDA, a Florida Fictitious Entity. WAYNE CHENG, M.D.'s and PARAG PATEL, M.D.'s treatment of CHAD LOCKARD was the kind of conduct they were employed to perform, it occurred substantially within the time and space limits authorized by the work to be performed, and was activated at least in part to

serve the interest of COASTAL CARDIOLOGY CONSULTANTS, P.A., a Florida Professional Association d/b/a THE HEART & VASCULAR INSTITUTE OF FLORIDA, a Florida Fictitious Entity.

119.    Defendant COASTAL CARDIOLOGY CONSULTANTS, P.A., a Florida Professional Association d/b/a THE HEART & VASCULAR INSTITUTE OF FLORIDA, a Florida Fictitious Entity, as the employer, principal, and/or master of the Defendants WAYNE CHENG, M.D. and PARAG PATEL M.D., is vicariously liable as a matter of law for the acts and omissions of the Defendants WAYNE CHENG, M.D. and PARAG PATEL M.D., as set forth in Counts III and IV herein.

WHEREFORE, Plaintiff CHAD LOCKARD demands a judgment against the Defendant COASTAL CARDIOLOGY CONSULTANTS, P.A., a Florida Professional Association d/b/a THE HEART & VASCULAR INSTITUTE OF FLORIDA, a Florida Fictitious Entity, for compensatory damages in an amount within the jurisdictional limits of this court, in excess of Fifteen Thousand Dollars ($15,000.00), plus costs and interest and for such other and further relief to which the Plaintiff may be justly entitled, and demands trial by jury of those issues triable as of right by a jury.

*/s / Steven R. Maher*
STEVEN R. MAHER
Florida Bar Number 887846
MATTHEW S. MOKWA
Florida Bar Number 47761
THE MAHER LAW FIRM, P.A.
271 West Canton Avenue, Suite #1
Winter Park, FL 32789
Phone: 407-839-0866
Fax:    407-425-7958
Email: smaher@maherlawfirm.com
srscheib@maherlawfirm.com
ppelton@maherlawfirm.com